IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARSOFT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2332 |
| | § | |
| UNITED LNG, L.P., UNITED LNG | § | |
| HOLDINGS, LLC, and STEPHEN | § | |
| P. PAYNE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION ON ARBITRATION

Pending before the court[1] is Defendants' Motion to Compel Arbitration (Doc. 9).[2]  The court has considered the motion, the response, all other relevant briefing, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that the motion be **GRANTED IN PART AND DENIED AS MOOT IN PART.**

## I.  Case Background

Plaintiff filed this action against two entities and one individual over business disputes.  Plaintiff alleged breach of contract, tortious interference with a contract, tortious interference with a business relationship, anticipatory breach, business disparagement, and fraudulent inducement.

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 28.

[2]    Also pending is Plaintiff's Motion for Preliminary Injunction (Doc. 3), which will be addressed in a separate memorandum.

## A.  <u>Factual Background</u>

Plaintiff is in the business of providing "market analysis, investment and risk management, and finance services to shipowners, shippers, finance institutions, maritime service providers, and other participants in the maritime sector."[3]  Defendants United LNG, L.P., ("United") and United LNG Holdings, LLC, ("United Holdings") operate in the liquefied natural gas ("LNG") market, particularly in the area of exporting of LNG.[4]  Defendant United Holdings is the general partner and registered agent of Defendant United.[5]

In June 2012, Defendant United signed a memorandum of understanding ("MOU") with Freeport-McMoRan Energy LLC ("FME") proposing the joint venture development of FME's offshore LNG facility as an LNG export facility.[6]  The MOU stated that Defendant United was developing a floating LNG project ("FLNG Project") and sought to use FME's LNG facility as a host terminal.[7]  In connection with the FLNG Project, Defendant United sought Plaintiff's services:

> to, among other things, identify the floating
> liquefaction and storage technology, cost, and

---

[3]     Doc. 1, Verified Compl. p. 2.

[4]     <u>Id.</u>

[5]     <u>Id.</u> p. 1.

[6]     <u>Id.</u> p. 3.

[7]     <u>Id.</u>

availability, identify and gather information on secondary liquefied natural gas terminals to facilitate swapping and/or trading of liquefied natural gas, conduct port analysis, identify the type of liquefied natural gas carriers, evalua[te] vessel availability and economics, [] conduct shipyard assessment[,] . . . . [and] organize a group to provide, fund, own, and operate floating liquefaction and storage offshore and liquefied natural gas carriers.[8]

Plaintiff and Defendant United executed a letter of agreement ("LOA") on July 12, 2012.[9] The LOA outlined the roles Plaintiff would play with respect to the FLNG Project and set out the compensation structure, which included an equity stake in United Marine Holdings, Ltd., ("UMHL"), a holding company responsible for all maritime activities under the LOA.[10] The LOA contained a provision stating, "Conflict resolution if required will be undertaken through the International Chamber of Commerce [("ICC")] in London UK."[11] Defendant Stephen P. Payne ("Payne"), an officer and founding member of Defendant United Holdings, signed the LOA for United.[12]

Disputes arose between Plaintiff and Defendant United regarding each other's performance of the LOA.[13] Claiming material

---

[8]     Doc. 8, Answer, Countercl., & 3rd-Party Compl. p. 6; see also Doc. 1, Verified Compl. p. 3.

[9]     Doc. 1, Verified Compl. p. 4.

[10]     See id. p. 5; Doc. 1-1, Ex. A to Verified Compl., LOA.

[11]     Doc. 1-1, Ex. A to Verified Compl., LOA p. 5.

[12]     See id. p. 7; Doc. 1, Verified Compl. p. 1.

[13]     See Doc. 1, Verified Compl. pp. 6-10; Doc. 8, Answer, Countercl., & 3rd-Party Compl. p. 6.

breaches by Plaintiff, Defendant United issued Plaintiff a written notice of the termination of the LOA in May 2013.[14]

**B.   Procedural Background**

On August 9, 2013, Plaintiff filed this lawsuit, alleging breach of contract against Defendant United, tortious interference with a contract against Defendants United Holdings and Payne, and tortious interference with a business relationship, anticipatory breach, business disparagement, and fraudulent inducement against all Defendants.[15]

More specifically, Plaintiff alleged that Defendant United breached the LOA by failing to compensate Plaintiff for its services, offering third parties exclusive rights that were granted to Plaintiff under the LOA, using Plaintiff's confidential work product without authorization, and wrongfully terminating the LOA.[16] With regard to the tortious-interference claim against Defendants United Holdings and Payne, Plaintiff alleged that they interfered with the LOA by causing Defendant United to breach the LOA in the manner described above.[17]  The claim for tortious interference with a business relationship against all Defendants was based on their alleged refusal to have United perform under the LOA unless

---

[14]      Doc. 8, Answer, Countercl., & 3rd-Party Compl. pp. 6-7.

[15]      See Doc. 1, Verified Compl. pp. 10-13.

[16]      See id. pp. 10-11.

[17]      See id. p. 11.

Plaintiff agreed to materially different contract terms, failure to fund Defendant United's share of UMHL, and statements to third parties that UMHL was no longer associated with the FLNG Project.[18]

Plaintiff further alleged that Defendants threatened to make the LOA "worthless" unless Plaintiff agreed to accept a lesser equity stake in UMHL, refused to pay Plaintiff's invoices, and wrongfully announced the termination of the LOA.[19]   Plaintiff claimed that Defendants also "published false and disparaging information" about Plaintiff, including that it had caused a dispute with Defendant United, that United had terminated Plaintiff, and that Plaintiff was no longer associated with the FLNG Project.[20]   The fraudulent inducement claim against all Defendants concerned allegedly false representations made to Plaintiff prior to the execution of the LOA to induce Plaintiff into signing the LOA and performing under it.[21]

Contemporaneously with its complaint, Plaintiff filed a motion for preliminary injunction.[22]   Plaintiff asked the court to enjoin Defendants from:  (1) "making false and/or disparaging statements" regarding Plaintiff or its involvement in the FLNG Project; (2)

---

[18]   See id.

[19]   See id. p. 12.

[20]   See id. p. 13.

[21]   See id.

[22]   See Doc. 3, Pl.'s Mot. for Prelim. Inj.

Case 4:13-cv-02332   Document 102   Filed in TXSD on 03/03/14   Page 6 of 23

replacing Plaintiff on the project; (3) taking any action to diminish Plaintiff's equity stake in the maritime components of the project, particularly transferring assets to any entity other than UMHL; and (4) reassigning or reselling Plaintiff's "exclusive brokerage roles" under the LOA.[23]  Plaintiff represented that it was planning to file a request for arbitration with the ICC to pursue its claims against Defendant United.[24]

Defendants United and United Holdings answered the complaint, filed counterclaims against Plaintiff for breach of contract and negligent misrepresentation, and sought joinder of a third party, John Speer ("Speer"), against whom they requested declaratory relief.[25]  Concomitantly, Defendants filed the pending Motion to Compel Arbitration.[26]

On October 1, 2013, Plaintiff filed an arbitration claim against Defendant United with the International Court of Arbitration of the ICC ("ICC Court").[27]  Plaintiff alleged that

---

[23]     Id. p. 1.

[24]     Id. p. 2 n.1.

[25]     The pleading specifies that it was filed by only the two corporate defendants.  See Doc. 8, Answer, Countercl., & 3rd-Party Compl.  However, this appears to be an error because Defendant Payne is represented by the same counsel and has joined other filings.

[26]     See Doc. 9, Defs.' Mot. to Compel Arbitration.

[27]     See Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 4 (stating, in part, that the request for arbitration was filed on October 3, 2013); but see Doc. 38, Tr. of Hr'g Dated Oct. 9, 2013 p. 8; Doc. 40-1, Ex. A to Defs.' Objections to Mag. J.'s Rulings, Request for Arbitration; Doc. 44, Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc. p. 3.

Defendant United:

> (a) made false representations designed to induce [Plaintiff] to enter into the LOA, (b) failed to secure funding for the project that it had promised, (c) threatened to terminate the LOA unless [Plaintiff] agreed to a sharp reduction in its equity interest in, and control over, UMHL, [(]d) proposed granting to third parties rights that belonged to [Plaintiff] under the LOA, (e) eventually terminated the LOA without justification, (f) made false claims to [Plaintiff's] clients and prospective associates that [Plaintiff] was no longer associated with the FLNG Project, and (g) made the confidential technology developed by [Plaintiff] for the FLNG Project available to third partes.[28]

Plaintiff did not file arbitration claims against Defendants United Holdings and Payne.[29]

Defendant United answered Plaintiff's request for arbitration and counterclaimed for breach of contract, negligent and fraudulent inducement, and tortious interference with a contractual relationship.[30]   Additionally, Defendant United objected to Plaintiff's failure to name Defendants United Holdings and Payne in the arbitration proceeding, arguing they were necessary parties.[31] Defendant United filed a request to join Defendants United Holdings and Payne as necessary parties to the arbitration.[32]   According to

---

[28]     Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 5.

[29]     See id. p. 4.

[30]     Id. at pp. 5-6.

[31]     Id. p. 6.

[32]     See Doc. 44-2, Ex. B to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., ICC Court Letter Dated Oct. 30, 2013.

Plaintiff, the Secretariat of the ICC Court treated Defendant United's request as one to bring claims of its own against Defendant United Holdings and Payne.[33]  Defendants United Holdings and Payne consented to arbitration before the ICC Court, according to Defendant United.[34]

Seeking "urgent interim or conservatory measures," Defendant United filed an application with the ICC Court.[35]  An "Emergency Arbitrator" was assigned to hear Defendant United's application and construed Defendant United's application as a request for preliminary injunction requiring Plaintiff to withdraw its request for preliminary injunction pending before this court, to cease representing that it is directly involved in the FLNG Project, and to cease tortious interference with the FLNG Project and United's involvement in it.[36]  On October 31, 2013, the Emergency Arbitrator found that Defendant United had failed to demonstrate irreparable harm and denied its request for interim relief.[37]

On November 5, 2013, Defendants filed a request for an

---

[33]     Doc. 44, Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc. p. 3 (citing Doc. 44-1, Ex. A to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., ICC Court Letter Dated Oct. 30, 2013; Doc. 44-2, Ex. B to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., ICC Court Letter Dated Oct. 30, 2013).

[34]     See Recording of Hr'g Dated Nov. 12, 2013.

[35]     Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 7.

[36]     Id. pp. 7, 18.

[37]     See id. pp. 17, 18.

emergency hearing on their motion to compel arbitration.[38]  In that filing, Defendants also sought abatement or dismissal.[39]  Plaintiff responded to the motion, and the court held a hearing on November 12, 2013.[40]  Among other concerns, Defendants expressed a desire to delay production of documents ordered by the court until their objections to the scope of discovery had been considered by the district judge.[41]  By scheduling the hearing, the court granted Defendants' request for an emergency hearing; however, the court ultimately denied the motion to stay.[42]  The court continued Defendants' motion to compel and, thereby implicitly, the motion to dismiss.[43]

On November 15, 2013, the court overruled Defendants' objections to the discovery orders and ordered Defendants to comply within ten days.[44]  After the expiration of the ten-day period, Plaintiff filed an emergency motion for enforcement of the court's order, and Defendants filed an emergency request for expedited

---

[38]   See Doc. 42, Defs.' Req. for an Emergency Hr'g on Defs.' Mot. to Compel Arbitration & Mot. to Abate or Dismiss Action.

[39]   See id.

[40]   See Doc. 44, Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc.; Doc. 47, Min. Entry Dated Nov. 12, 2013.

[41]   See Recording of H'rg Dated Nov. 12, 2013.

[42]   See Doc. 48, Oral Order Dated Nov. 12, 2013.

[43]   See Recording of Hr'g Dated Nov. 12, 2013.

[44]   See Doc. 51, Order Dated Nov. 15, 2013.

discovery not previously requested.[45]   The preliminary injunction hearing was held on December 20, 2013.[46]

On February 14, 2014, Defendants filed a notice of the ICC Court's ruling that granted Defendants United Holdings and Payne's joinder to the arbitration proceeding.[47]   Defendants represented that the arbitration would proceed as against the additional parties and stated, "Therefore, all claims that were ple[]d or could have been ple[]d in this proceeding are now being adjudicated by the ICC."[48]

The court immediately held a telephone conference to entertain the parties' arguments regarding the effect of the arbitrator's ruling on this case.[49]   The parties informed the court that it was necessary for the court to rule on the motion to compel and the motion for preliminary injunction that remained pending here.[50]

Plaintiff responded to Defendant's notice of the ICC ruling, claiming that it was "littered with misstatements and half-truths" and that nothing, in fact, had changed in the arbitration as a

---

[45]   See Doc. 56, Pl.'s Emergency Mot. for Enforcement of Ct.'s Oct. 9, 2013 Order; Doc. 59, Defs.' Emergency Req. for Expedited Disc.

[46]   See Doc. 77, Min. Entry Dated Dec. 20, 2013.

[47]   See Doc. 98, Defs.' Notice of ICC Court's Ruling Granting Defs. United Holdings and Payne's Joinder to the Arbitration Proceeding Before the ICC.

[48]   Id. p. 2.

[49]   See Doc. 99, Min. Entry Dated Feb. 18, 2014.

[50]   See Recording of H'rg Dated Feb. 18, 2014.

result of the arbitrator's recent ruling.[51]   Plaintiff's position is that "the claims that [Plaintiff] is making against the Additional Parties in this Court are not now, and never have been, made in the ICC, nor has the ICC required that they be brought there."[52]   Plaintiff asserts that the additional parties to the arbitration are joined "not as respondents to claims by [Plaintiff], but rather only as respondents to claims by [Defendant] United."[53]

As the parties at least agree on one point, that the court still must rule on the pending motions to compel arbitration and for preliminary injunction, the court herein addresses the motion to compel arbitration.

## II.  Arbitration Standard

The Federal Arbitration Act ("FAA") applies to cases brought in this court and states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[51]    Doc. 100, Pl.'s Resp. to Defs.' Notice of Int'l Ct. of Arbitration's Ruling p. 1.

[52]    Id. p. 2.

[53]    Id.

9 U.S.C. § 2.   The FAA allows a party that has entered an arbitration agreement to request an order compelling the parties to proceed with arbitration.   9 U.S.C. § 4.   If the court is "satisfied" that an action is subject to an enforceable arbitration provision, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."   9 U.S.C. § 3.

The United States Supreme Court has recently and repeatedly affirmed that the FAA established "a liberal federal policy favoring arbitration agreements." CompuCredit Corp. v. Greenwood, __ U.S. ___, 132 S. Ct. 665, 669 (2012)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also AT&T Mobility LLC v. Concepcion, ____ U.S. ____, 131 S. Ct. 1740, 1745 (2011)(internal quotation marks omitted)(stating that the FAA reflects "both a liberal federal policy favoring arbitration" and "the fundamental principle that arbitration is a matter of contract").

Courts perform a two-prong inquiry when determining whether to compel a party to arbitrate: (1) whether the parties agreed to arbitrate; and (2) whether a federal statute or policy overrides the parties' agreement to arbitrate.   Dealer Computer Servs., Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009)(citing Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003)).   The first prong of the inquiry, arbitrability, has

two parts: (1) "whether a valid agreement to arbitrate exists," and (2) "whether the dispute falls within that agreement." Id. (citing Will-Drill Res., Inc., 352 F.3d at 214).   The court may only determine challenges with respect to: (1)  the existence, as opposed to the validity, of the contract containing the arbitration provision, and (2) the validity of the arbitration provision itself.   See Will-Drill Res., Inc., 352 F.3d at 214, 218-19.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." Tittle v. Enron Corp., 463 F.3d 410, 418 (5th Cir. 2006)(quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)).   The presumption is so strong that only "the existence of an express provision excluding the grievance from arbitration" or "the 'most forceful evidence' of a purpose to exclude the claim from arbitration" will rebut it. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Ref. & Supply Co., 449 F.3d 616, 619-20 (5th Cir. 2006)(quoting Commc'ns Workers of Am. v. Sw. Bell Tel. Co., 415 F.2d 35, 39 (5th Cir. 1969)); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)(quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24, as stating, "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

At the intersection of Sections 2 and 3 of the FAA, however, the United States Supreme Court found the intent to apply

13

traditional principles of state contract law to the question whether an arbitration agreement could be enforced by or against nonparties to the agreement through equitable estoppel or any other state contract theory. <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 631 (2009). Accordingly, a non-signatory may enforce an arbitration clause against a signatory pursuant to the FAA if the relevant state contract law allows it to do so. <u>Id.</u> The question whether a non-signatory can compel arbitration under an arbitration provision is a matter for the court to decide. <u>See</u> <u>Qpro Inc. v. RTD Quality Servs. USA, Inc.</u>, 761 F. Supp.2d 492, 497 (S.D. Tex. 2011)(citing <u>Carlisle</u>, 556 U.S. at 631).

### III. Analysis

A significant portion of the litigation in this case to date has focused on the court's discovery orders, Plaintiff's preliminary injunction motion, and the court's refusal to handle the motion to compel on an emergency basis.[54] Defendants have pushed the court to rule first on their motion to compel and, assuming a ruling in their favor, to stay this action pending arbitration. Their goal is no secret: they sought to avoid

---

[54] Whether all of the claims ultimately should be arbitrated appears to be of much less concern. In fact, Plaintiff intimated, in its Motion for Preliminary Injunction, that it might be amenable to litigating its disputes with Defendants United Holdings and Payne, in addition to the claims against Defendant United, in arbitration. <u>See</u> Doc. 3, Pl.'s Mot. for Prelim. Inj. p. 2 n.1 ("[Plaintiff] is also pursuing claims against [Defendants] Payne and United Holdings, and it is unclear whether those parties will consent to arbitration or, alternatively, whether claims against them will be pursued exclusively in this Court."). At the court's hearing of October 9, 2013, however, Plaintiff made it clear that it would "prefer to proceed" against Defendants United Holdings and Payne in this court. Doc. 38, Tr. of Hr'g Dated Oct. 9, 2013 p. 15.

additional discovery here and, more importantly, to avoid the preliminary injunction hearing.  Plaintiff's position is that, regardless of whether the entire case is referred to arbitration, Plaintiff is entitled to an injunction issued by this court to maintain the status quo.

Notwithstanding the parties' motivations and the arguments supporting their respective positions on preliminary injunctive relief, the determinative legal issue for the pending motion to compel is whether Defendants United Holdings and Payne, as non-signatories to the LOA,[55] are able to compel Plaintiff, a signatory to the LOA, to arbitrate the claims it has alleged against them. This key issue has received relatively little attention in the parties' briefs.

In their original motion to compel, Defendants do not address the distinction between the rights of signatories and non-signatories at all.  Defendants state, without citing any legal authority:

> Nothing in the contract suggests any intent to exclude the claims now asserted by Plaintiff from the broad scope of the agreement to arbitrate.  Applying the fundamental principles of contract interpretation, the conclusion is compelled that all of Plaintiff's claims in this action fall within and are subject to the agreement to arbitrate set forth in the [LOA]. . . .
> Moreover, the arbitration clause in the [LOA] is not limited to Plaintiff's contract claims.  The arbitration

---

[55]     The parties agree that Defendant United Holdings and Payne are not signatories to the LOA or any arbitration agreement with Plaintiff.  Defendant Payne did sign the LOA but only as a principal on behalf of Defendant United, not on his own behalf.

clause does not contain any limitations as to what claims are subject to arbitration.[56]

Defendants proceed to assert that tort claims are arbitrable if interwoven with the contract at issue and contend that all of Plaintiff's claims as to all defendants arise from interpreting clauses in the LOA.

In its response, Plaintiff explains that it intends to arbitrate its claims against Defendant United, the only other signatory to the LOA. However, Plaintiff contends that its claims against Defendants United Holdings and Payne are not subject to any agreement to arbitrate, and, thus, the court lacks the authority to compel arbitration on those claims. Plaintiff cites no law to support its position and does not reach whether a non-signatory may compel arbitration pursuant to an arbitration agreement. Rather, the bulk of Plaintiff's response focuses on whether the court has the authority to issue a preliminary injunction after determining that a claim is arbitrable.

At the hearing on October 9, 2013, Defendant United cited Texas case law holding that tortious-interference claims against non-signatories who were agents or affiliates of the other signatory fell "on the arbitration side of the scale."[57]

---

[56]   Doc. 9, Defs.' Mot. to Compel Arbitration p. 5.

[57]   Doc. 38, Tr. of Hr'g Dated Oct. 9, 2013 pp. 13-14 (citing In re Vesta, Ins. Group, Inc., 192 S.W.3d 759, 762 (Tex. 2006)). Defendant United also cited Colt Unconventional Res., LLC v. Resolute Energy Corp., CA No.3:13-CV-1324-K, 2013 WL 3789896, slip op. at *3 (N.D. Tex. July 19, 2013), a case that found a signatory was equitably estopped from avoiding arbitration with non-

Defendants' subsequent request for an emergency hearing on their motion to compel arbitration focuses mostly on their objections to the court's decision not to rule immediately on the motion to compel and the court's discovery orders.  However, Defendants also broach the central dispute, framing it as whether the non-signatories can compel arbitration pursuant to the LOA arbitration provision.  They contend that the issue "ought to be moot" as Defendants United Holdings and Payne consented to joinder in the ICC Court proceedings.[58]  Their legal argument only goes so far as to cite federal case law holding that state law determines whether arbitration clauses apply to non-signatories.  Plaintiff's response does not address the key issue at all.

As directed by the United States Supreme Court in <u>Carlisle</u>, this court turns to state law to determine whether the arbitration agreement here may be enforced by the non-signatories, Defendants United Holdings and Payne.  A small problem in this case is that the parties disagree as to the law governing interpretation of the LOA.  The LOA stated "The Jurisdiction of the legal agreement(s) between the parties is to be Texas[.]"[59]  Before the ICC Court,

---

signatories.  That case, however, relied on the Fifth Circuit approach in <u>Grigson v. Creative Artists Agency L.L.C.</u>, 210 F.3d 524, 528 (5th Cir. 2000).  Because <u>Grigson</u> relied on federal, rather than state, law, the court finds that it is no longer reliable precedent in light of the United States Supreme Court's decision in <u>Carlisle</u>.

[58]    Doc. 42, Defs.' Req. for an Emergency Hr'g on Defs.' Mot. to Compel Arbitration & Mot. to Abate or Dismiss Action p. 5.

[59]    Doc. 1-1, Ex. A to Verified Compl., LOA p. 5.

Plaintiff argued that this provision is a choice-of-law clause designating Texas law, but Defendant United contended that the applicable law is English law due to contacts with England.[60]   In its briefing on the pending motion, however, Defendant United relies on Texas and federal law and not on any other state or nation's laws.[61]   Therefore, the court looks to Texas law.[62]

As an initial finding, the court acknowledges that the parties agree that Plaintiff is required to arbitrate its claims against Defendant United, and, in fact, Plaintiff has initiated those proceedings.   Thus, the court finds the portion of Defendants' motion requesting that it compel Plaintiff to arbitrate the claims against Defendant United to be moot.   The remaining claims are tortious interference with a contract, tortious interference with a business relationship, anticipatory breach, business disparagement, and fraudulent inducement against Defendants United Holdings and Payne.

In 2006, the Supreme Court of Texas addressed the question of whether a nonparty to the arbitration agreement could compel arbitration of a claim of tortious interference with a contract. See In re Vesta Ins. Grp., Inc., 192 S.W.3d 759, 760 (Tex. 2006).

---

[60]   Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 4.

[61]   See, e.g., Doc. 9, Defs.' Mot. to Compel Arbitration, pp. 5-7.

[62]   By failing to brief any other law, Defendant has forfeited a choice-of-law argument with regard to its motion to compel arbitration.   See Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 n.2 (5th Cir. 2009).

There, an independent insurance agent, who had agreed to arbitrate claims under his contract with an insurance company, instead filed a tortious-interference claim against the insurance company's parent company, the agent who replaced him, and two officers or affiliates of each. See id. The court analyzed the case in the context of direct-benefits estoppel, which generally holds that non-signatories "must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law." Id. at 761.

Finding that a tortious-interference claim has qualities of both, as the general obligation is imposed by law but a person must be a stranger to the contract to commit tortious interference, the court held that "tortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise more from the contract than general law, and thus fall on the arbitration side of the scale." Id. at 762. The court based the decision on the reality that corporations act through human agents and the acts of those agents are generally considered acts of the corporation. Id. If the arbitration clause requires parties to arbitrate all disputes "under or with respect to" a contract, then it reflects the intent to include disputes about their agents' actions. Id. The court concluded that tortious-interference claims against a signatory's employees or affiliates must be arbitrated, even if they are non-signatories. Id.

As in that case, Plaintiff did not sue any stranger to the LOA. Defendant United Holdings is the general partner and agent of Defendant United, and Defendant Payne is an officer and founding member of Defendant United Holdings. Plaintiff asserted, in its complaint that "Payne controls the actions of United through his control of . . . United Holdings."[63]   The court finds that Plaintiff's claim of tortious interference with a contract against Defendants United Holdings and Payne fits squarely within the decision of In re Vesta Ins. Grp., Inc. and must be arbitrated.

The other claims against Defendants United Holdings and Payne are not directly addressed in the Texas case. However, Plaintiff has already agreed that it must arbitrate all of its claims against Defendant United, which include the causes of action against Defendants United Holdings and Payne, thereby conceding that the remaining claims all fit within the scope of the arbitration agreement. In fact, the language of the LOA arbitration provision is broad enough to cover all of the claims as it requires "[c]onflict resolution" to be undertaken in arbitration.[64]

Finding that the scope of the arbitration provision is broad enough to encompass Plaintiff's claims of tortious interference with a business relationship, anticipatory breach, business disparagement, and fraudulent inducement against Defendant United,

---

[63]    Doc. 1, Verified Compl. pp. 1-2.

[64]    See Doc. 1-1, Ex. A to Verified Compl., LOA p. 5.

the court examines whether the logic of In re Vesta Ins. Grp., Inc. applies to require Plaintiff to arbitrate those claims against the non-signatory defendants.  The court first notes that Plaintiff's complaint lumped the alleged wrongdoing of all three defendants together in these four claims, insinuating that they acted as one in taking the complained-of actions.

The legal principle that provided the backbone for the In re Vesta Ins. Grp., Inc. is direct-benefits estoppel, which focuses on the non-signatories' obligation to arbitrate when seeking benefits of the contract containing the arbitration provision.  See id. at 761.  As explained above, the Supreme Court of Texas extended this estoppel principle to force a signatory to arbitrate its claims against non-signatories when liability is connected to the contract rather than imposed by law.  See id. at 761.

Liability for Plaintiff's tortious interference with a business relationship is a general obligation imposed by law, but, like Plaintiff's other tortious-interference claim, nonliability arises from connections with the LOA.  The LOA provided the anchor for Plaintiff and Defendant United's business relationship, and the alleged interference related to the refusal to perform under the LOA unless Plaintiff accepted materially different contract terms.  The rationale of In re Vesta Ins. Grp., Inc. applies equally to this claim because Defendants United Holdings and Payne are intimate affiliates of Defendant United.  In its complaint,

21

Plaintiff asserted that they acted on Defendant United's behalf.[65]

Liability for anticipatory breach arises from the contract itself.  Plaintiff accused Defendants of indicating through their actions that they did not intend to perform under the LOA.  It is axiomatic that only parties to a contract can be liable for breaching it.  Thus, any liability of Defendants United Holdings and Payne is connected to their obligations under the LOA or their responsibility for the actions of Defendant United.

Business disparagement is a wrong created by law, not contract.  In this case, however, the content of the alleged disparagement was that Plaintiff caused a dispute with Defendant United, that Defendant United terminated Plaintiff under the LOA, and that Plaintiff is no longer associated with the subject of the LOA.  Absent the existence of the LOA, this claim would not exist.

Similarly, liability for fraudulent inducement only arises if the inducer is successful in persuading the other party to enter a contract.  See Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001).  Plaintiff attributes material misrepresentations to Defendants generally, causing it to sign the LOA.

Frankly, all of these claims are interrelated and overlapping, and all are directly connected to the LOA, regardless of whether liability for the identified cause of action arises from the LOA itself or is imposed by law.  Based on the connection of every

---

[65]     See Doc. 1, Verified Compl. pp. 1-2.

claim to the LOA and the affiliation of Defendants United Holdings and Payne with Defendant United, the court finds that all of Plaintiff's claims are subject to arbitration pursuant to the LOA provision.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion to Compel Arbitration be **GRANTED IN PART AND DENIED AS MOOT IN PART**.   If this Memorandum and Recommendation is adopted, the case should be stayed until the parties have completed arbitration.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 3rd day of March, 2014.

Nancy K. Johnson
United States Magistrate Judge