IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARSOFT, INC.,** | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 413-cv-2332** |
| | § | |
| **vs.** | § | |
| | § | **JURY DEMANDED** |
| **UNITED LNG, LP, UNITED LNG** | § | |
| **HOLDINGS, LLC, AND STEPHEN** | § | |
| **PAYNE** | § | |
| **Defendants,** | § | |
| | § | |

**Defendants' Suggestion of Mootness, Rule 12(c), 12(h)(2) and 12(h)(3) Motion to
Dismiss Plaintiff's Motion for Preliminary Injunction, and Motion to Dismiss
Motion for Preliminary Injunction for Lack of Subject Matter Jurisdiction**

Defendants file this Suggestion of Mootness and Rule 12(c), 12(h)(2) and 12(h)(3)

Motion to Dismiss Plaintiff's Motion for Preliminary Injunction, and would respectfully

show the Court that all matters contemplated by the Plaintiff's Motion for Preliminary

Injunction are moot and otherwise prohibited by law, as follows:

## I.      Basis

1.      This motion to dismiss Marsoft's Motion for Injunctive Relief is brought

under Rule 12(c), 12(h)(2) and 12(h)(3), as the issues before the Court are now made

moot, and the Court now lacks subject matter jurisdiction over Plaintiff's claim. The

Rules allow a party to bring a motion to for failure to state a claim or failure to join a

party under Rule 19.  Under Rule 12(h)(2)(B) and (C), a party may file a Rule 12 motion

for failure to state a claim upon which relief can be granted or join a person required by

Rule 19(b) by motion under Rule 12(c), which allows for a motion for judgment on the

pleadings after pleadings are closed, but early enough not to delay trial, or at trial.[1]  Lack of subject matter jurisdiction may be raised at any time.[2]

## II.    Facts

2.    The root of the dispute, and injunctive relief Marsoft, Inc. ("Marsoft") seeks, centers on alleged rights and obligations under a Letter of Agreement between Marsoft and United LNG, LP ("United LNG") to develop a floating liquefied natural gas project (the "FLNG Project") to export liquefied natural gas from the Main Pass Energy Hub terminal off the coast of Louisiana.[3]  The FLNG Project included a maritime component involving the liquefaction vessels that would take natural gas from the Main Pass Energy Hub, process it into liquefied natural gas, and load it onto vessels that would transport the liquefied natural gas to overseas buyers. Freeport-McMoRan was not in the business of liquefaction, and sought United LNG as a joint venture partner to procure the necessary licenses with the United States Department of Energy and end user agreements with countries to which the United States would allow the sale of liquefied natural gas.

3.    The Letter of Agreement between United LNG and Marsoft, however, depended upon a Memorandum of Understanding between United LNG and Freeport-

---

1   FED. R. CIV. P., Rules 12(c), 12(h)(2)(B) and (C), 19(b); *see also* Rules 12(b)(1), 12(b)(6), and 12(b)(7).

2   *Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 697 (5th Cir. 1997), *cert. denied,* 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 675 (1997).

3   A true and correct copy of the Letter Agreement is attached as Exhibit A; *see also* Erik Saenz's Business Records Affidavit, Exhibit E.

McMoRan Energy, which owned the Main Pass Energy Hub.[4] Though the Memorandum expired by its own terms on December 31, 2012, Freeport-McMoRan extended the expiration date to December 31, 2013.[5]

4.      Marsoft claims that defendants tried to terminate it from the FLNG Project, and diminish its equity stake in the "maritime" components. According to Marsoft, the Letter of Agreement contemplated the creation of a holding company, United Marine Holdings, LP ("UL Marine"), to be owned jointly by United LNG and Marsoft.  The Letter of Agreement provides Marsoft with no other possessory right other than hypothetical brokerage rights.  Marsoft does not have any such right, other than rights or potential rights to UL Marine.

5.      The Magistrate Judge held a hearing on Marsoft's request for injunctive relief on December 20, 2013, and issued her Recommendation on March 3, 2014. The Memorandum of Understanding between United LNG and Freeport-McMoRan, however, expired by its own terms on December 31, 2013, eleven days after the Magistrate Judge conducted the Preliminary Injunction hearing, and two months before she issued her Recommendation.  Furthermore, on March 7, 2014, Freeport-McMoRan Energy confirmed expiration of the Memorandum of Understating by a letter to United LNG, stating that United LNG no longer had authority or permission to use Freeport-McMoRan

---

4    A copy of the Memorandum of Understanding is attached as Exhibit B; *see also* Erik Saenz's Business Records Affidavit, Exhibit E.

5    A copy of the extension is attached as Exhibit C; *see also* Erik Saenz's Business Records Affidavit, Exhibit E.

Energy's name, or to refer to the Main Pass Energy Hub, in United LNG's literature and other marketing materials.[6]

6.      Consequently, a material change in circumstances has rendered the Letter of Agreement between United LNG and Marsoft moot.  Injunctive relief at this time would serve no purpose, preserve no status quo, and violate well-established Constitutional principles and procedural rules.

### III.    Argument and Authorities

**A.    Summary of Argument**

7.      Marsoft does not have standing to pursue an injunction because the FLNG Project contemplated by the Letter of Agreement was dependent on the Memorandum of Understanding between United LNG and Freeport-McMoRan Energy to develop the Main Pass Energy Hub into a liquefied natural gas terminal. Since the Memorandum of Understanding no longer has any effect, there is no injury to redress with injunctive relief.

8.      Even if Marsoft were a party with an injury, such an "injury" would exist only in a theoretical capacity, without any practical effect other than unnecessarily restraining the activity of United LNG, because the Letter of Agreement to which Marsoft is a party has no utility due to the expiration of the Memorandum of Understanding. As such, as a matter of prudential mootness, all procedures at the Court's

---

6    A true and correct copy of that letter is attached hereto as Exhibit D; *see also* Erik Saenz's Business Records Affidavit, Exhibit E.

disposal are available without an effective purpose, and the Court should issue no injunctive relief.

9.      Marsoft does not have standing because it is not the proper party to pursue injunctive relief.  Marsoft is not a real party in interest with a substantive right on which injunctive relief may be granted.

10.      Finally, Marsoft is, at most, a limited partner of this entity and cannot recover damages for a wrong done solely to UL Marine, even if it were to have suffered an injury.  Marsoft has not even plead to establish any predicate issues by which it might be able to seek injunctive relief in a derivative action.

## B.      Constitutional Mootness

11.      Federal courts exercise jurisdiction over cases as authorized by the United States Constitution and the jurisdictional statutes.[7] A party seeking to invoke the jurisdiction of the federal court has the burden of proving that subject matter jurisdiction exists.[8]  Generally, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.[9]

---

7   *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (explaining that federal courts are courts of limited jurisdiction, bestowed by the Constitution and statute, rather than judicial act and that there is a presumption that a suit lies outside this limited jurisdiction; ruling District Court did not have inherent power to enforce terms of settlement agreement under doctrine of ancillary jurisdiction); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001) (explaining that federal courts are courts of limited jurisdiction and that there is a presumption that a suit lies outside this limited jurisdiction; holding that claim before the Court was not a federal question).

8   *Howery*, 243 F.3d at 916; *Epps v. Bexar-Medina-Atascosa Counties Water Improvement District,* 665 F.2d 594, 595 (5th Cir. 1982).

9   U.S. CONST., art. III; *see Goldin v. Bartholow*, 166 F.3d 710, 717-18 (5th Cir. 1999) (explaining that a moot case presents no Article III case or controversy, and court has no constitutional jurisdiction to

---

12.     The component of the determination of whether there is a case or controversy properly before the Court is the party's standing.[10]   To have standing under Article III of the Constitution, a party must present an injury that is concrete and particularized, actual and imminent, and not conjectural or hypothetical.[11]   Standing is not an "ingenious academic exercise in the conceivable."[12]   Rather, it requires that a party have personally suffered some actual or threatened injury as result of putatively illegal conduct of the defendant.[13]   Such injury must be traced to the challenged action and is likely to be redressed by favorable decision.[14]

13.     The purported purpose of the requested injunctive relief before the Court was to preserve the status quo until Marsoft's claims could be arbitrated before the International Chamber of Commerce.   To "preserve the status quo" generally refers to a continued, unchanged maintenance of the "relative positions of the parties until a trial on

---

resolve the issues it presents); *Lockridge v. City of Oldsmar, Fla.*, 475 F. Supp. 2d 1240, 1251 (M.D. Fla. 2007) aff'd sub nom., *Lockridge v. City of Oldsmar*, 273 F. App'x 786 (11th Cir. 2008) (providing, as a matter of law, that a moot case cannot present an Article III case or controversy; citing *Coral Springs Street Sys. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir.2004)).

10   *See* U.S. CONST., art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750-52, 104 S.Ct. 2215, 82 L.Ed.2d 556 (1984) (describing concept of standing as a determination as to whether there is an Article III controversy before a court); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (defining "controversy" under Article III § 2); *see also McCall v. Dretke,* 390 F.3d 358, 361 (5th Cir. 2004) (explaining that standing is an essential component of federal subject matter jurisdiction).

11   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566, 112 S.Ct. 2130, 119 L.Ed. 351 (1992).

12   *Id.*, 504 U.S. at 560-61.

13   *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed. 700 (1982).

14   *Id*.

the merits can be held."[15]  Marsoft contends that the relative positions of the parties as to the injunctive relief sought in this case requires the preservation of Marsoft's alleged equity stake in the maritime components of the FLNG Project and the preservation of Marsoft's alleged exclusive brokerage roles under the Letter of Agreement until the merits of Marsoft's claims can be decided at arbitration.

14.    The preservation of *any* equity stake in the maritime components of the FLNG Project is dependent on the viability of the FLNG Project.  This viability is predicated on the existence of the Memorandum of Understanding between United LNG and Freeport-McMoRan Energy and on the potential for the eventual realization of its objectives.  The Memorandum of Understanding expired, by its own terms, on December 31, 2013, depriving United LNG of the rights it held to the FLNG Project.[16]

15.    The date December 31, 2013 marks the loss of all of United LNG's interests in FLNG Project, leaving United LNG with nothing concrete, particularized, actual, imminent or otherwise in existence to provide under the Letter of Agreement.  The circumstances as they have developed have therefore been altered by this supervening event, leaving United LNG without rights with Freeport-McMoRan Energy, and Marsoft with no more than a conjectural, academic argument by which to allege any injury.[17]  It is

---

15  *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981)).

16  *See Lockridge*, 475 F. Supp. 2d at 1251 (explaining that circumstances subsequent to challenged conduct may preclude a court from awarding a plaintiff meaningful relief; citing *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998)).

17  *Cf. Hogan v. Mississippi University for Women*, 6646 F.2d 1116, 1117 (5th Cir. 1981) (dismissing denial of injunction without prejudice, on Article III grounds, as moot because relief sought by male applicant to all female university granted as a matter of law).

therefore not possible that the facts underlying the case will return to their original status quo because there is no status quo to preserve.[18]

16.     Stated differently (and more succinctly), the Memorandum of Understanding, or "MOU," is "DOA."

## C.     Prudential Mootness

17.     A proceeding may also be moot under circumstances in which an Article III controversy exists but remedial considerations would otherwise be meaningless.  In such a case, there are no longer adverse parties with sufficient legal interests to maintain the proceedings.[19]  Prudential mootness is a "facet of equity" applied when there is little or no likelihood of actual injury and therefore little or no benefit to the party alleging injury.[20]  There is limited Fifth Circuit authority governing the application of prudential mootness.[21]

---

18   The actual damages alleged by Marsoft are not relevant to the events that have caused a change to the status quo underlying injunction proceeding because they pertain to allegations under the prior status quo.  These alleged damages may be sought at arbitration on the merits of the underlying case. *Compare as to relevance of damages to mootness of underlying cause*, *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 8-9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (5th Cir. 1978) (claim for damages saving cause of action from determination of mootness in Article III controversy that was otherwise moot).

19   *See Air Line Pilots Ass'n, Intern. v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990) (analyzing "whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).").

20   *Penthouse Intern., Ltd. v. Meese*, 939 F.2d 1011. 1019-20 (D.C.Cir.1991), cert. denied, 503 U.S. 950, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992)("Where it is so unlikely that the court's grant of declaratory judgment will actually relieve the injury, the doctrine of prudential mootness—a facet of equity—comes into play. This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power.").

21   *League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 432 n. 15 (explaining, in context of Constitutional mootness analysis and determination that case is not moot, that the Court need not decide whether to adopt the doctrine of prudential mootness).  The Fifth

---

18.     When a procedural mechanism to proceed exists in an injunction hearing, and a party has standing to proceed, a cognizable danger to one or more of the parties should also exist.[22]  Otherwise, the moving party has not shown that relief is needed, and any act short of abatement of activity is merely an academic exercise, and the motion for injunctive relief is moot.[23]

19.     Despite the terms of the Magistrate's Recommendation, United LNG no longer has a FLNG Project with Freeport-McMoRan Energy.  Any injunction under circumstances in which United LNG could not diminish Marsoft's equity stake in the maritime components of the FLNG Project, or reassign or resell Marsoft's exclusive

---

Circuit has applied the doctrine in the context of bankruptcies and receivership disputes.  *See First Indiana Federal Savings Bank v. Federal Deposit Insurance Corporation, as receiver for United Savings Association of Texas, and United Savings Association of Texas, FSB*, 964 F.2d 503,  (5th Cir. 1992) (dismissing claims under theory of prudential mootness, where Article III standing existed, because "there is no practical purpose in requiring their adjudication on the merits."); *see also In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994) (explaining, "Equitable mootness is a prudential concept that is unique to bankruptcy matters. … Equitable mootness authorizes an appellate court to decline review of an otherwise viable appeal of a Chapter 11 reorganization plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted." *see also In re Blast Energy Services, Inc.*, 593 F.3d 418, 424-25 (5th Cir. 2010) (same).

22   *U.S. v. W. T. Grant Co.*, 73 S.Ct. 894, 897-98, 345 U.S. 629, 73 S.Ct. 894 (1953) (finding no abuse of discretion in determination that case was moot when there was not "something more than the mere possibility" of a cognizable danger of activity underlying case and controversy in which parties retained standing); *compare Lewis v. Continental Bank Corp.*, 494 U.S. 472, 479, 110 S.Ct. 1249, 108 L.Ed. 400 (1990) (providing dicta that in an injunction hearing there must be a "specific live grievance" and not "just an abstract disagreement" while determining that no Article III controversy existed as to Constitutional challenge to state law that had been changed).

23   *W. T. Grant Co.*, 73 S.Ct. at 897-98; *see A.L. Mechling Barge Lines, Inc. v. U.S.*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961) (dismissing, on grounds of mootness, Interstate Commerce Commission (ICC) order granting certain rate reliefs without prior ICC completion of required investigation, when application for tariffs in question was withdrawn with finality).

---

*Defendants' Suggestion of Mootness and Motion to Dismiss*                    Page **9** of **18**

brokerage roles under the Letter of Agreement is meaningless because the wrongs those equitable remedies are meant to address no longer exist.[24]

20.     The legal rights of the parties, even if properly exercised, would therefore provide the Court with nothing to determine.[25]  Ergo, even if Marsoft were a party with an injury under the Letter of Agreement remediable by the injunctive relief sought, an exacting assessment still reveals no palpable injury.  Such "injury" would be no more than an abstract interest effected by the relief available, without a tactile consequence that supports the cause for relief.[26]

21.     Despite the absence of injury, the Magistrate's Recommendation appears to be so broad as to actually *require* United LNG to negotiate with Freeport-McMoRan Energy for any future involvement in the MPEH, and to require United LNG to ensure that Marsoft has some type of role in any such negotiation and subsequent involvement.[27]

---

24  *Compare Building and Const, Dept. v. Rockwell Intern. Corp.*, 7 F.3d 1487 (10th Cir. 1993) (determining application of procedural mootness doctrine to be inapplicable due to potential remedy available).

25  *See Aetna Life Ins. Co.*, 300 U.S. at 240-41 (providing – in terms of Constitutional limitations on judicial power – that for the judicial function to be appropriately exercised, there must be a concrete case admitting an immediate and definitive determination of the legal rights of the parties) *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (explaining as to mootness, "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.").

26  *Cf. DeFunis v. Odegaard*, 416 U.S. 312, 319-20, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (dismissing as moot a claim by law student applicant challenging affirmative action policies when law student had progressed nearly to the point of graduation); *Merkey v. Board of Regents of State of Fla.*, 493 F.2d 790 (5th Cir. 1974) (determining that suit was moot because all plaintiffs were non-students seeking recognition of student organization refused recognition by state university).

27  *Compare Goldin*, 166 F.3d at 717-19 (dismissing claims by trustee on behalf of trust because claims were moot "from the moment of termination" of the trust); *Joc Inc. v. ExxonMobil Oil Corp.*, 507 Fed.Appx. 208 (3rd Cir. 2012) (determining that potential injunctive relief was moot as to injunction

An injunctive order (or any court order) may not dictate how a party should, could or will negotiate any contract, especially under well-settled Texas contract law.[28]

22.     Therefore, all procedures at the Court's disposal are available without an effective purpose, and the Court should issue no injunctive relief and no further obligation that infringes on their independent rights.[29]

23.     Defendants object to the Magistrate Judge's conclusion in this regard, and further object to the facts upon which it is based. This Court should decline to accept the Magistrate Judge's Recommendation.

---

that prohibited termination of franchise agreement, after underlying contract establishing franchise agreement had expired).

28  *See* TEX. CONST. art. 1 § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligations of contracts, shall be made."); *see also Wood Motor Co. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185 (1951) (explaining

[I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.);

*See also Sherrill v. Union Lumber Co.*, 207 S.W. 149, 153-54 (Tex.Civ.App.—Beaumont 1918 no writ) (explaining in the context of arms-length contracts,

Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.);

*see also* TEX. BUS. & COMM. CODE § 1.302 (providing broad latitude by which parties to an agreement may choose to determine standards of performance).

29  *Compare Chevron U.S.A., Inc. v. Traillour Oil Co.*, (5th Cir. 1993) (determining that actual controversy existed due to obligations of successive holders of oil and gas lease to original seller of leasehold interest).

**D.    Marsoft may not pursue Injunctive Relief because it is not a Real Party in Interest.**

24.    The Court's subject matter jurisdiction is also limited by Rule 17(a)(1) of the Federal Rules of Civil Procedure.[30]   This rule requires that "[a]n action must be prosecuted in the name of the real party in interest."[31]   The Fifth Circuit defines the real party in interest as "the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery."[32]   The purpose of this Fifth Circuit terminology "is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right."[33]   Accordingly, a plaintiff (including a corporate entity) that does not possess a right under the substantive law is not a "real party in interest" with respect to that right

---

30  FED. R. CIV. P. Rule 17(a)(1); *see Flast v. Cohen*, 392 U.S. 83, 99-100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (providing "The fundamental aspect of standing is that it focuses on the party seeking to get [his or her] complaint before a federal court and not on the issues the party merely wishes to have adjudicated."; explaining that when standing is placed in issue, "the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.").

31  FED. R. CIV. P. Rule 17(a)(1).

32  *Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir.1990) (determining that subcontractor, which was not in privity with parish or engineer on parish construction project, was not "real party in interest" in suit brought by general contractor); *compare Flast*, 392 U.S. at 99-100 (explaining that federal taxpayers had standing to sue to prevent such expenditures of federal funds for purchase of textbooks and other instructional materials for use in parochial schools on ground that such expenditures were prohibited by Establishment Clause of First Amendment).

33  *Farrell Constr.* 896 F.2d at 142; *see also Gogolin & Stelter v. Karn's Auto Imps., Inc.*, 886 F.2d 100, 102 (5th Cir.1989) ("The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles.").

and may not assert it.[34]

25.     Under the Letter of Agreement, UL Marine was to be owned 50% by Marsoft and 50% by United LNG.  Under the Letter of Agreement, UL Marine was to own 10% of United LNG.  The Letter of Agreement does not provide that Marsoft was to have any other possessory right, and Marsoft does not have any other possessory right, other than rights or potential rights to UL Marine.

26.     UL Marine is not a party to this suit, and has never been a party to this suit despite the fact that it is the real party in interest with standing to invoke the Court's jurisdiction.  Marsoft could have potentially benefitted from transactions that could have been executed by UL Marine. However, Marsoft does not hold the substantive right sought to be enforced, and has not met its burden to invoke the jurisdiction of the Court pursuant to Rule 17(a).[35]  It has been three months since this issue was brought to the Court's attention.[36]  There is no record of any attempt or effort UL Marine to ratify, join

---

34  *Id*; *compare In re Enron Corp. Securities, Derivative & ERISA Litigation*, 279 F.R.D. 395 (S.D. Tex. 2011) (determining that investors, who owned only indirect sub-participation interests in creditor's rights or claims related to notes, were not real parties in interest with standing to enforce the notes; citing *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969).

35  *See Epps*, 665 F.2d at 595 (party claiming federal subject-matter jurisdiction bears the burden of proving it); *compare Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 305, 306 (5th Cir. 2001) (plaintiff failed to carry burden of proving subject matter jurisdiction because, where debtor filed for bankruptcy after events giving rise to employment discrimination claims occurred, bankruptcy trustee was the real party in interest with exclusive standing to assert employment discrimination claims).

36  The issue of standing was first raised immediately prior to the December 20, 2013 injunction hearing, as reflected in the record of that hearing: Tr. 27:1-9 "With respect to the issue of standing, first of all, we know we can raise standing at any time and, frankly, this issue came to light after Mr. Eckbo's deposition. The standing here – the arguments that the Court has heard about a company 'United Marine Holdings, Limited.'  That – the evidence will show that company was set up by none other than Marsoft in Bermuda and Marsoft owns 100 percent of the equity. That company is not before the Court. It's not seeking relief before the Court." Tr. 27:1-9; *see also* Tr. 32:2-5 "We reassert vehemently our standing argument because to the extent that they are claiming there is something to join

---

or be substituted into this cause of action.[37]

27.     Defendants object to the Magistrate Judge's conclusion in this regard, and further object to the facts upon which it is based. This Court should decline to accept the Magistrate Judge's Recommendation.

**E.     UL Marine, LP has not Taken Any Action under the Terms of Any Contract and Marsoft is Merely a Limited Partner of UL Marine, LP.**

28.     UL Marine itself has not taken any actions under the terms of any contract involving United LNG. Any lawsuit about potential actions taken by UL Marine therefore is not ripe, and any legal determination, particularly in the form of injunctive relief, made by the Court in regard to the potential actions of UL Marine would merely be advisory.[38]

29.     Marsoft is, at most, a limited partner of UL Marine.  Under the Texas Business Organizations Code, a limited partner may bring an action in a court on behalf of the limited partnership to recover judgment in the limited partnership's favor *if* (1) all general partners with authority to bring the action have refused to bring the action; or (2) an effort to cause those general partners to bring the action is not likely to

---

enjoy, well, the party to claim that is not before the Court."; *see also* Doc 75, "Briefing of Law As To Standing Required To Invoke Court's Jurisdiction Over Foreign Corporation."

37  *See* FED. R. CIV. P. Rule 17(a)(3) (permitting a "reasonable time" for a real party in interest to ratify, join, or be substituted into an action).

38  *See Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 25, 27 (5th Cir. 1974) (explaining that ripeness of case for adjudication is a constitutional jurisdictional prerequisite for injunctive relief); *compare Alejandrino v. Quezon*, 271 U.S. 528, 46 S.Ct. 600, 70 L.Ed. 1071 (1926) (determining that an otherwise ripe issue not properly raised does not prevent a case from being dismissed as moot).

succeed.[39]  Moreover, in a derivative action, the complaint must contain with particularity the (1) effort, if any, of the plaintiff to secure initiation of the action by a general partner; or (2) the reasons for not making the effort.[40]  In derivative actions generally, Texas courts have placed limits on such powers."[41]

30.    The relationship between Marsoft and the Defendants in governed by Texas law.[42]  There is nothing in Marsoft's complaint that suggests that it satisfied the above-referenced provisions of the Texas Business Organizations Code.  Marsoft should have brought a claim derivatively for United Marine Holdings, LP, but it failed to do so.  Marsoft also failed to state why it could not obtain the consent of United Holding's general partner to bring a derivative action for the benefit of United Holdings, LP against United LNG Holdings, LLC, United LNG, LP and Steve Payne.

31.    Defendants object to the Magistrate Judge's conclusion in this regard, and

---

39  TEX. BUS. ORG. CODE ANN. § 153.401.

40  TEX. BUS. ORG. CODE ANN. § 153.403.

41  *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990) (setting out that "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." and holding that claim that shareholder misappropriated corporation's assets belonged to corporation); *see also City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 679 (Tex.App.—San Antonio 1998, pet. denied) (independent dealer and corporate operator of gasoline service station had standing, but shareholder of corporate operator did not, to raise challenge to city's taking of property and creating of nuisance by blocking access to service station); *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (sole shareholder of insurance agency that had forfeited its corporate charter for failure to pay franchise taxes was not properly a successor of interest and lacked standing to sue on corporation's cause of action against insured for premiums due); *Plotkin v. Joekel*, 304 S.W.3d 455, 474 (Tex.App.—Houston[1st Dist.] 2009, pet. denied) (quoting *Bilodeau v. Webb*, 170 S.W.3d 904, 912 (Tex.App.—Corpus Christi 2005, pet. denied), "[A] cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in the loss of earnings to the stockholders.").

42  *See* Exhibit A, Letter of Agreement, Part 4(d), "The jurisdiction of the legal agreement(s) between the parties is to be Texas[.]"

---

further object to the facts upon which it is based. This Court should decline to accept the Magistrate Judge's Recommendation.

## CONCLUSION AND PRAYER

Defendants' Motion for a Preliminary Injunction must be dismissed. For the reasons provided herein, (1) all matters raised by Plaintiff's Motion for a Preliminary Injunction are moot; (2) Plaintiff has not established that this Court possesses subject-matter jurisdiction over the injunctive relief sought; (3) Plaintiff has failed to state a claim upon which relief can be granted; (4) the case and controversy before the Court is not ripe; (4) Plaintiff has failed to establish that as a limited partner it can act on behalf of a third party limited partnership and cannot recover damages for a wrong alleged against a limited partnership of which it is a mere limited partner; (5) an injunction may not dictate how a party should, could or will negotiate any contract.

WHEREFORE, Defendants respectfully request this Court: (1) on grounds of Constitutional mootness provide no injunctive relief to Plaintiff; (2) on grounds of prudential mootness provide no injunctive relief to Plaintiff; (3) on grounds of ripeness provide no injunctive relief to Plaintiff; (4) prohibit Plaintiff, as a limited partner of a third party limited partnership from proceeding and from recovering damages for a wrong done solely to that third party limited partnership; and (5) provide such further relief, in law or equity that they may show themselves justly entitled.

Respectfully submitted,

THE VETHAN LAW FIRM, PC

By: /s/charlesmrvethan_____

Charles M.R. Vethan
Attorney-in-Charge
Texas Bar No: 00791852
Southern District Bar No: 19566

Of Counsel:

THE VETHAN LAW FIRM, PC
3501 Allen Parkway
Houston, Texas 77019
Telephone: (713) 526-2222
Telecopier: (713) 526-2230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of this forgoing document was served on all parties, represented through counsel or *pro se*, pursuant to the Federal Rules of Civil Procedure through CM/ECF on this March 17, 2014:

Brock C. Akers
Phillips Akers Womac
3200 Phoenix Tower
3200 Southwest Freeway
Houston, Texas 77027

K Neil Austin (pro hac vice)
Foley Hoag LLP
115 Seaport Blvd
Boston, MA 02210

/s/ charlesmrvethan_____
Charles M.R. Vethan