IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARSOFT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2332 |
| | § | |
| UNITED LNG, L.P., UNITED LNG | § | |
| HOLDINGS, LLC, and STEPHEN | § | |
| P. PAYNE, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM, RECOMMENDATION, AND ORDER**</u>

Pending before the court[1] are: (1) Defendants' Suggestion of Mootness, Federal Rule of Civil Procedure ("Rule") 12(c), 12(h)(2), and 12(h)(3) Motion to Dismiss Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss Motion for Preliminary Injunction for Lack of Subject Matter Jurisdiction (Doc. 104) ("Defendants' Motion to Dismiss"); (2) Plaintiff Marsoft, Inc.'s ("Plaintiff" or "Marsoft") Application for Writ of Attachment and Writ of Garnishment (Doc. 118); (3) Plaintiff's Motion for Judgment on the Pleadings (Doc. 135); (4) Plaintiff's Motion for Summary Judgment (Doc. 140); and (5) Defendant Stephen P. Payne's ("Payne") Letter Motion to be Removed Individually (Doc. 145).

The court has considered the motions, the responses, the replies, all other relevant briefing, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants'

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 28.

motion to dismiss be **DENIED AS MOOT**, Plaintiff's motion for judgment be **DENIED AS MOOT**, Plaintiff's motion for summary judgment be **GRANTED**, and Defendant Payne's motion to be removed individually be **DENIED**. Plaintiff's application for writs of attachment and garnishment is **GRANTED**.

## I.  Case Background

This action began as a business dispute, which led to Plaintiff's legal claims of breach of contract against Defendant United LNG, L.P., ("United"), tortious interference with a contract against Defendants United LNG Holdings, LLC, ("United Holdings") and Payne, and tortious interference with a business relationship, anticipatory breach, business disparagement, and fraudulent inducement against all Defendants.[2] Plaintiff filed this lawsuit on August 9, 2013.[3] Contemporaneously with its complaint, Plaintiff filed a motion for preliminary injunction.[4]

Defendants United and United Holdings answered the complaint and filed counterclaims against Plaintiff for breach of contract and negligent misrepresentation.[5] Concomitantly, Defendants filed a motion to compel arbitration.[6]

---

[2]   See Doc. 1, Verified Compl.

[3]   See id.

[4]   See Doc. 3, Pl.'s Mot. for Prelim. Inj.

[5]   Defendants also sought declaratory relief against a third party, John Speer, who was subsequently dismissed.  See Doc. 8, Answer & Countercl., & 3rd-Party Compl.; Doc. 76, Order Dated Dec. 20, 2013.

[6]   See Doc. 9, Defs.' Mot. to Compel Arbitration.

On October 1, 2013, Plaintiff filed an arbitration claim against Defendant United with the International Court of Arbitration of the International Chamber of Commerce ("ICC Court").[7] Plaintiff did not file arbitration claims against Defendants United Holdings or Payne.[8] In the arbitration proceeding, Defendant United answered Plaintiff's request for arbitration and counterclaimed for breach of contract, negligent and fraudulent inducement, and tortious interference with a contractual relationship.[9] Defendant United also filed a request before the ICC Court to join Defendants United Holdings and Payne as necessary parties to the arbitration.[10] On February 12, 2014, the ICC Court allowed Defendants United Holdings and Payne to join the arbitration proceeding.[11]

Prior to the ICC Court's joining Defendants United Holdings and Payne, this court held a preliminary injunction hearing on December 20, 2013.[12] In March, the undersigned issued memoranda and

---

[7]     See Doc. 38, Tr. of Hr'g Dated Oct. 9, 2013 p. 8 (indicating that the request for arbitration was dated October 1, 2013); Doc. 40-1, Ex. A to Defs.' Objections to Mag. J.'s Rulings, Request for Arbitration (same); Doc. 44, Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc. p. 3 (same); but see Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 4 (stating that the request for arbitration was filed on October 3, 2013).

[8]     See Doc. 44-3, Ex. C to Pl.'s Opposition to Defs.' Mot. for Emergency Hr'g & Mot. to Stay Disc., Order of Emergency Arbitrator p. 4.

[9]     Id. at pp. 5-6.

[10]    See id. p. 5.

[11]    See Doc. 98, Defs.' Notice of ICC Court's Ruling Granting Defs. United Holdings and Payne's Joinder to the Arbitration Proceeding Before the ICC Court.

[12]    See Doc. 77, Min. Entry Dated Dec. 20, 2013.

recommendations on injunctive relief and on arbitration.[13]   The court recommended that the motion for injunctive relief be granted in part and that the court issue a preliminary injunction against Defendants United and Payne.[14]  In the Memorandum and Recommendation ("MR&O") on Arbitration, the court concluded that the portion of the motion addressing Plaintiff's claims against United was moot because that arbitration was in progress by that point.[15]  The court found that Defendants United Holdings and Payne, although non-signatories to the relevant arbitration agreement, were able to compel Plaintiff to arbitrate its claims against them.[16]

In conjunction with their objections to the undersigned's MR&O on Injunctive Relief, Defendants filed the pending motion to dismiss Plaintiff's motion for preliminary injunction.[17]  On March 31, 2014, the district court adopted both of the undersigned's memoranda and recommendations.[18]  The district court issued an injunction against Defendants United and Payne, ordered the parties to arbitrate their

---

[13]    See Doc. 101, Mem., Recommendation, & Order on Injunctive Relief; Doc. 102, Mem. & Recommendation on Arbitration.

[14]    Doc. 101, Mem., Recommendation, & Order on Injunctive Relief pp. 41-42.

[15]    Doc. 102, Mem. & Recommendation on Arbitration p. 15.

[16]    Id. pp. 22-23.

[17]    See Doc. 103, Defs.' Objections Dated Mar. 17, 2014; Doc. 104, Defs.' Suggestion of Mootness, Rule 12(c), 12(h)(2) and 12(h)(3) Mot. to Dismiss Pl.'s Mot. for Prelim. Inj. & Mot. to Dismiss Mot. for Prelim. Inj. for Lack of Subject Matter Jurisdiction ("Defs.' Mot. to Dismiss").

[18]    See Doc. 107, Order Adopting Magis. Judge's Mem. & Recommendation on Arbitration; Doc. 108, Corrected Order Adopting Magis. Judge's Mem., Recommendation, & Order on Injunctive Relief.

disputes, and stayed the case pending arbitration.[19]

Less than a month later, the parties entered a settlement agreement resolving both this lawsuit and the arbitration.[20] Consideration in the amount of $1.6 million was due to be paid by Defendants on or before May 8, 2014.[21]  On May 9, 2014, Plaintiff filed a notification of breach of the settlement agreement and an unopposed motion for leave to file an amended complaint based on Defendants' failure to make payment by the due date.[22]  The court granted Plaintiff's motion for leave to amend.[23]

In the amended complaint, Plaintiff did not reassert the causes of action that the court previously sent to arbitration.[24]  Rather, Plaintiff alleged that Defendants breached the settlement agreement by failing to pay the agreed consideration by the deadline.[25] Plaintiff asked the court to enter judgment in its favor in the settlement amount plus interest, costs, and attorneys' fees and to maintain the preliminary injunction until the arbitration is

---

[19]     Doc. 107, Order Adopting Magis. Judge's Mem. & Recommendation on Arbitration p. 1; Doc. 108, Corrected Order Adopting Magis. Judge's Mem., Recommendation, & Order on Injunctive Relief pp. 1-2.

[20]     See Doc. 111, Jt. Notification of Settlement.

[21]     Id.

[22]     See Doc. 114, Notification of Breach of Settlement Agreement; Doc. 115, Unopposed Mot. for Leave to Amend Compl.

[23]     See Doc. 116, Order Dated May 12, 2014.

[24]     See Doc. 115, Unopposed Mot. for Leave to Amend Compl. p. 3; Doc. 117, Pl.'s Am. Compl.

[25]     Doc. 117, Pl.'s Am. Compl. p. 4.

resolved.[26]   On May 23, 2014, Plaintiff filed the pending application for prejudgment writs of attachment and garnishment.[27]

On May 27, 2014, Defendants filed an answer to Plaintiff's amended complaint.[28] Defendants admitted that they entered into a written contract with Plaintiff to resolve all of their claims against each other, that Defendants agreed to make payment of the settlement amount before 5:00 p.m. on May 8, 2014, and, subject to nine affirmative defenses, that they did not make payment by the deadline.[29]   On May 28, 2014, Defendants' counsel moved to withdraw.[30] At a hearing the following day, the court denied the motion to withdraw at that time due to an imminent, previously scheduled deposition but, a few months later, ultimately granted the motion to withdraw.[31]

On July 8, 2014, Plaintiff filed a motion for judgment on the pleadings.[32] Defendants timely responded and concurrently moved for leave to file a second amended answer in order "to flesh out their

---

[26]   Id. p. 5.

[27]   See Doc. 118, Pl.'s Appl. for Writ of Attach. & Writ of Garnishment.

[28]   See Doc. 122, Defs.' Answer to Pl.'s Am. Compl.

[29]   See id. pp. 2-4; Doc. 117, Pl.'s Am. Compl. pp. 3-4.

[30]   See Doc. 124, Mot. to Withdraw.

[31]   See Doc. 128, Tr. of Hr'g on May 29, 2014 pp. 7-8; Doc. 142, Order Dated Aug. 19, 2014.

[32]   See Doc. 135, Pl.'s Mot. for J. on the Pleadings.

affirmative defenses."[33]   The court granted leave to amend Defendants' answer.[34]   Defendants' amended answer provided additional facts in support of seven affirmative defenses.[35]

On August 8, 2014, Plaintiff filed the pending motion for summary judgment.[36]   The court's order granting Defendants' motion to withdraw was entered before the deadline for filing a response to the motion had passed.[37]   On the motion docket date, Defendant Payne filed a letter in which he notified the court that none of the defendants was represented by counsel and that Defendant United was a defunct company.[38]   Defendant Payne recounted facts in opposition to Plaintiff's motion for summary judgment.[39]   Defendant Payne also requested that he be dismissed from the lawsuit.[40]

Because of the number and diversity of the pending motions, the court addresses them one at a time in an order that best suits the current posture of the case.

## II.  Defendants' Motion to Dismiss

The gravamen of Defendants' dispositive motion, which was filed

---

[33]     Doc. 138, Defs.' Mot. for Leave to File Am. Answer to Pl.'s Am. Compl.; see also Doc. 139, Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings.

[34]     Doc. 143, Order Dated Aug. 20, 2014.

[35]     See Doc. 144, Defs.' Am. Answer to Pl.'s Am. Compl. pp. 3-6.

[36]     See Doc. 140, Pl.'s Mot. for Summ. J.

[37]     See id.; Doc. 142, Order Dated Aug. 19, 2014.

[38]     See Doc. 145, Def. Payne's Letter Mot. to be Removed Individually p. 1.

[39]     See id. pp. 1-2.

[40]     Id. p. 2.

in conjunction with Defendants' objections to the MR&O on Injunctive Relief, is that a material change in circumstances[41] has rendered moot the letter of agreement between Defendant United and Plaintiff. As a result, Defendants argue, Plaintiff no longer has standing to pursue an injunction because there is no injury to redress and no status quo to preserve.   Additionally, Defendants argue that Plaintiff was not the real party in interest; rather, UL Marine, a nonparty, was the party with the substantive right that Plaintiff sought to enforce through injunctive relief.

Two weeks after the filing of Defendants' motion and objections, the district court adopted the MR&O on Injunctive Relief and entered the recommended injunction.   On the same day, the district court also adopted the undersigned's MR&O on Arbitration, to which no objections were filed, and stayed the case pending completion of the arbitration proceedings.

Within a few weeks, the parties settled all of the claims before this court and in arbitration, pending Defendants' payment of the settlement amount.   When Defendants failed to pay as agreed, Plaintiff amended its complaint to address only Defendants' breach of the settlement agreement.   Defendants' counsel postulated at a

---

[41]     Defendants contend that the development of a floating liquefied natural gas ("LNG") project, in connection with which Defendant United and Plaintiff entered a letter of agreement, was dependent on a memorandum of understanding ("MOU") between Defendant United and Freeport-McMoRan Energy ("FME") concerning a joint venture to develop FME's offshore LNG facility into an LNG export facility.   See Doc. 104, Defs.' Mot. to Dismiss pp. 2-4. Defendants represent that the MOU expired by its own terms on December 31, 2014. Id. p. 3.

hearing thereafter that the injunction was no longer relevant because of Plaintiff's amendment but agreed that the injunction remained in force until Defendants mounted a successful challenge to its continued validity (which they never attempted).[42]

The motion to dismiss is moot at this point in the litigation. The district court implicitly denied it when it adopted the MR&O. If there was any doubt at that time, there certainly is none now. In fact, the parties resolved the underlying issues after the motion was filed; Plaintiff amended the complaint; and Defendants never sought relief from the injunction.  The motion is moot.

### III.  Plaintiff's Motion for Judgment on the Pleadings and Plaintiff's Motion for Summary Judgment

Plaintiff's Motion for Judgment on the Pleadings and Plaintiff's Motion for Summary Judgment raise virtually identical arguments.  In both of the motions, Plaintiff argues against Defendants' affirmative defenses, pointing out that Defendants admitted that they entered a settlement agreement with Plaintiff and that they failed to pay the settlement amount as promised. Plaintiff's Motion for Summary Judgment was filed in response to Defendants' amendment of their answer and supersedes the prior motion.  Plaintiff's Motion for Judgment on the Pleadings is therefore moot.

Prior to the deadline for filing a response to Plaintiff's Motion for Summary Judgment, the court granted the motion to

---

[42]    See Doc. 128, Tr. of Hr'g on May 29, 2014 pp. 6-7.

withdraw filed by Defendants' counsel.  The withdrawal left Defendant Payne pro se and the other defendants unrepresented.[43] Defendant Payne filed a letter on the submission date that, in part, challenges Plaintiff's bases for summary judgment.  The court considers the letter to be Defendant Payne's response to the pending summary judgment motion.[44]  The court also takes into consideration the arguments and the evidence filed by Defendants in response to Plaintiff's Motion for Judgment on the Pleadings.

**A.**   **Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477

---

[43]    Although Defendant Payne can represent himself, he is not allowed to represent Defendants United and United Holdings pro se.  See Memon v. Allied Domecq QSR, 385 F.3d 871, 873 (5th Cir. 2004)(citing Rowland v. Cal. Men's Colony, 506 U.S. 194, 202 (1993))(noting the well settled rule that a corporation must be represented by a licensed attorney).  Defendants United and United Holdings did not respond to Plaintiff's motion.

[44]    Defendants United and United Holdings filed no response to Plaintiff's Motion for Summary Judgment.  The Local Rules for the Southern District of Texas state that failure to respond to a motion will be taken as a representation of no opposition.  L.R. 7.4.  Generally, the non-moving party has twenty-one days to file a response before the failure to do so is considered a lack of opposition.  See L.Rs. 7.3, 7.4.  However, because it would be improper to dismiss an action merely due to a lack of response, this court must carefully consider the merits of the unanswered motion for summary judgment.  Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>See</u> <u>Royal v. CCC & R Tres Arboles, L.L.C.</u>, 736 F.3d 396, 400 (5th Cir. 2013)(quoting <u>Anderson</u>, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Exxon Corp. v. Oxxford Clothes, Inc.</u>, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party carries its burden, "the opposing party may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial." <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)). If the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.

**B. <u>Discussion</u>**

In order for Plaintiff to succeed on its breach of contract

11

claim, it must prove that: (1) a valid contract existed at the time of the alleged breach; (2) plaintiff fully performed its obligations; (3) defendant breached the contract; and (4) plaintiff was damaged as a result of the breach.  Nat'l Health Res. Corp. v. TBF Fin., LLC, 429 S.W.3d 125, 131-32 (Tex. App.—Dallas 2014, no pet.).  Defendants admit that they entered a valid contract with Plaintiff and that they did not pay the agreed-upon sum.  There can be no dispute that Plaintiff was damaged by not receiving the settlement amount.  Neither party discusses the second element of breach of contract,[45] but both agree that the only question is whether any of Defendants' affirmative defenses defeat Plaintiff's claim.

The seven affirmative defenses in Defendants' live answer are deliberate interference, accord and satisfaction, failure to mitigate, unclean hands, prior material breach, frustration of purpose, and impossibility of performance.[46]  Defendants rely on the following allegations to support of all of the affirmative defenses:

---

[45] One of Defendants' affirmative defenses is prior material breach based on Paul Eckbo's ("Eckbo") alleged violation of his obligation to keep the terms of the settlement agreement confidential.  See Doc. 144, Defs.' Am. Answer to Pl.'s Am. Compl. pp. 4-5.  Eckbo refuted the factual basis for the defense in his declaration.  See Doc. 141-1, Ex. 1 to Pl.'s Mem. in Support of its Mot. for Summ. J. p. 1, Decl. of Eckbo Dated Aug. 1, 2014 ("I have not disclosed any terms of the Settlement Agreement to any non-parties to the Settlement Agreement nor have I made any threats to sue any non-parties to the Settlement Agreement.").  In a declaration filed in support of Plaintiff's application for writs of attachment and garnishment, Eckbo explicitly stated that Plaintiff was in compliance with the settlement agreement at all times.  See Doc. 134-1, Ex. 1 to Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Supplemental Decl. of Eckbo Dated June 25, 2014 p. 1.

[46] See Doc. 144, Defs.' Am. Answer to Pl.'s Am. Compl. pp. 3-6.

(1) Paul Eckbo ("Eckbo"), Plaintiff's principal, discussed terms of the settlement agreement with Defendant United's investors and other third parties, in violation of the settlement agreement's confidentiality provision; and (2) he threatened to sue the investors.[47]   In his response, Defendant Payne argues that prior material breach warrants "throw[ing] out" "the entire settlement."[48]

Defendants submitted two letters and Defendant Payne's declaration as evidence.[49]   One letter, which is dated April 28, 2014, is addressed to Defendant United from Chalid Arrab ("Arrab") on Arrabco Holdings stationery.[50]   Therein, Arrab stated:

> Marsoft, in [its] pleadings and testimony, listed me and my company accusing me of extortion and numerous other accusations [sic].   There were numerous emails to and from Paul Eckbo not only mentioning me and my company but threats to sue me.   In addition he also makes [sic] threats about DCC Bulk and Panther who invested in United.[51]

Arrab further stated that he and others planned to fund the settlement amount until Plaintiff demanded $100,000 per funding

---

[47]   See id.   The defense of accord and satisfaction, unlike the other six defenses, is not explained at all.   See id. p. 5.   The allegations stated here cover the entirety of what Defendants pled as factual support for their affirmative defenses.   See id. pp. 3-6.

[48]   Doc. 145, Def. Payne's Letter Mot. to be Removed Individually p. 2.

[49]   See Doc. 139 through 139-5, Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings.   The letters were submitted as exhibits to Defendant Payne's letter motion as well.   See Doc. 145, Def. Payne's Letter Mot. to be Removed Individually.

[50]   See Doc. 145, Ex. 1 to Def. Payne's Letter Mot. to be Removed Individually, Letter from Arrab to Defendant United Dated Apr. 28, 2014.

[51]   Id.

party for inclusion in the release.[52]  "This along with threats made by Paul Eckbo to third parties that he settled with United, but can still go after me, my company and other two companies [sic] caused these other groups to back out of paying a portion of this settlement."[53]

The other letter, which is undated, is addressed to Brian Ettinger ("Ettinger"), Defendant United's corporate counsel, from Konstantinos Mitropoulos ("Mitropoulos") on Panther Holding Group SA stationery.[54]  Mitropoulos stated:

> After a review [of] the Marsoft's pleadings, discovery and recently learning of statements by Marsoft's Chairman to third parties about our company and potential legal action, we are declining to participate in this settlement funding.
>
> We were disturbed by Mr. Eckbo's statements disparaging our company and its capabilities in the shipping industry.[55]

In his declaration, Defendant Payne stated that Defendant United received Arrab's letter on April 28, 2014, and that Ettinger received Mitropoulos' letter on April 30, 2014.[56]  Apparently relying on Arrab's letter, Defendant Payne asseverated that "Eckbo's discussions with third parties about the Settlement Agreement, in

---

[52]   See id.

[53]   Id.

[54]   See Doc. 145, Ex. 2 to Def. Payne's Letter Mot. to be Removed Individually, Undated Letter from Mitropoulos to Ettinger.

[55]   Id.

[56]   Doc. 139-5, Ex. D to Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings, Unsworn Decl. of Def. Payne, pp. 1, 2.

breach of the confidentiality clause of the Settlement Agreement, and due further [to] his threats of future litigation, the main investors withdrew their support from the project."[57]   Defendant Payne also relied on Mitropoulos' letter in stating that it confirmed that Eckbo's alleged statements to third parties sabotaged the funding of the settlement.[58]

Defendant Payne added that he had "learned" from a former employee of Plaintiff, Martin Korsvald ("Korsvald"), that Eckbo "had discussed the settlement terms with third parties, including the amount of the settlement."[59]   According to Defendant Payne, Korsvald also "communicated" that Eckbo "had discussed instigating further litigation against United's investors after the settlement was funded."[60]   Absent Eckbo's actions, Defendant Payne declared, the investors would have funded the settlement.[61]   Defendant Payne attributed to Eckbo knowledge of the necessity of outside funding, stating that it was a basic assumption of the settlement agreement.[62]

Plaintiff submitted a declaration of Eckbo refuting that, since entering the settlement agreement, he had disclosed any terms of the

---

[57]   Id. p. 2.

[58]   See id.

[59]   Id.

[60]   Id.

[61]   See id.

[62]   Id.

15

settlement agreement to nonparties or had threatened to file suit.[63] The focus of Plaintiff's summary judgment motion, however, does not rely on Eckbo's testimony but on the argument that Defendants' evidence in support of the factual allegations underlying their affirmative defenses is inadmissible.  Because Defendants bear the burden of proof on their affirmative defenses, Plaintiff contends, the absence of admissible evidence requires summary judgment in its favor.

A party defending against summary judgment must establish a genuine issue of material fact with admissible evidence.  See Fed. R. Civ. P. 56(c)(1).  The Federal Rules of Evidence determine whether the summary judgment evidence is admissible.  Hearsay is not admissible evidence.  Fed. R. Evid. 802.  Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  The Federal Rules of Evidence list twenty-nine exceptions to the rule against hearsay.  Fed. R. Evid. 803-804, 807.

One of those exceptions is for records of regularly conducted business activities.  See Fed. R. Evid. 803(6)(A)-(C).  In order to qualify for the exception, a record must be made at or near the time of the act by someone or from information from someone with knowledge, must be "kept in the course of a regularly conducted activity of a business," and must be made as a regular practice of

---

[63]    See Doc. 141-1, Ex. 1 to Pl.'s Mem. in Support of Mot. for Summ. J., Decl. of Eckbo Dated Aug. 1, 2014 p. 1.

that activity.  Fed. R. Evid. 803(6)(A)-(C).  To be admissible, testimony of the custodian or a qualified witness must support that the record meets all of these criteria and "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness."  See Fed. R. Evid. 803(6)(D)-(E).

Declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Arrab and Mitropolous' letters contain hearsay as they include out-of-court statements offered to prove the truth of the subject matter: (1) that Eckbo made accusations and threats against parties who planned to fund the settlement; and (2) that funding for the settlement fell through as a result.  Defendants do not dispute that the letters contain hearsay but, rather, file a declaration from Erik Saenz ("Saenz"), as record custodian for Defendant United, in which he asserts that the letters are business records of Defendant United.[64]

Defendants' attempt to cast Arrab and Mitropoulos' letters as Defendant United's business records is unavailing.  In his declaration, Saenz asserted that the letters "were made at or near the time or reasonably soon thereafter" but did not identify the regularly conducted business activity that they purportedly

_____

[64]   See Doc. 139-4, Ex. C to Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings, Unsworn Decl. for Admis. of Bus. Rs.

17

recorded.   He referred generally to the "act, event, condition, opinion, or diagnosis," merely repeating the language of the hearsay exception.   In actuality, the letters were related to a particular legal matter, not to Defendant United's regularly conducted business activities.   See Brauninger v. Motes, 260 F. App'x 634, 637 (5th Cir. 2007)(unpublished)(citing Broad. Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 238 (5th Cir. 1988)(holding that letters created primarily for litigation were not created as part of the regular course of business)).

Saenz further stated that the letters were "created and received" in the regular course of Defendant United's business, an obvious impossibility.   Creating letters like the ones here was not a regular practice of Defendant United as explained above; in fact, they were not created by Defendant United at all.   See United States v. Imoila, 100 F.3d 380, 392 (5th Cir. 1996)(quoting Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 279, (5th Cir. 1991) as stating that the exception only applies if the person making the statement is acting in the regular course of business).   Saenz continued, stating that "it was the regular course of business of United LNG, LP[,] for an employee or representative of United LNG, LP[,] with knowledge . . . to make the records or to transmit the information thereof to be included in such records."   Yet, the letters were made and information transmitted, not by an employee of Defendant United, but by third parties Arrab and Mitropolous, and the letters made clear that the authors were representing interests separate from Defendant

18

United.  The court will not allow Saenz to read into Federal Rule of Evidence 803(6) his own nonsensical definition of "regular course of business."

The only other evidence submitted by Defendants is Defendant Payne's declaration.  Like the letters, Defendant Payne's declaration is riddled with hearsay.  He incorporated the letters and repeated their content.  The statements in his declaration about the content of the letters is inadmissible for the reasons explained above.  His statements that he "learned" from a former employee of Plaintiff that Eckbo "had discussed the settlement terms with third parties, including the amount of the settlement," and that the former employee "communicated" that Eckbo discussed instigating litigation against the settlement investors in the future are both thinly veiled hearsay.[65]  Defendant Payne was relying on the out-of-court statements of the former employee for their truth regarding Eckbo's alleged discussion of settlement terms and threats of future litigation.

Other portions of the declaration lack the factual support to demonstrate that Defendant Payne's statements were made on personal knowledge.  For example, Defendant Payne stated that Eckbo's alleged "discussions with third parties" and "threats of future litigation" caused the investors to withdraw their funding for the settlement, but Defendant Payne did not state how he acquired that information,

---

[65]     Doc. 139-5, Ex. D to Defs.' Resp. to Pl.'s Mot. for J. on the Pleadings, Unsworn Decl. of Def. Payne p. 2.

19

which appears to have come from Arrab's letter.[66]  He also asserted that Eckbo and Plaintiff knew that third-party investment was required to fund the settlement agreement and that Eckbo and Plaintiff "were well aware there were no revenue generating operations."[67]  Defendant Payne offered no insight into how he knew that Eckbo and Plaintiff were aware of or had knowledge of these matters.

Defendant Payne added an assertion that the method of funding the settlement agreement was a "basic assumption."[68]  That basic assumption did not become a part of the settlement agreement itself and may not be admissible pursuant to applicable contract principles.  Regardless, that assertion, on its own, does not support any of Defendants' affirmative defenses.  Likewise, Defendant Payne's conclusions that Eckbo's discussions of the settlement agreement and threats of litigation interfered with the funding of the settlement agreement rely on inadmissible hearsay and fail to provide sufficient evidence of any of Defendants' affirmative defenses.

Defendants failed to produce admissible evidence[69] in support

---

[66]  <u>Id.</u>

[67]  <u>Id.</u>

[68]  <u>Id.</u>

[69]  The court notes that Defendant Payne's letter response is not evidence as it is unsworn and does not comply with 28 U.S.C. § 1746 for unsworn declarations.  <u>See also</u> Fed. R. Civ. P. 43(c) (stating that a motion which relies on facts outside of the record may be supported by affidavits); Fed. R. Civ. P. 56(c)(4) (stating that a motion for summary judgment may be supported or opposed by an affidavit or declaration that is made on personal knowledge by an affiant

of the factual allegations that Eckbo discussed the terms of the settlement agreement with third parties or that he threatened to sue the investors.  As each of Defendants' affirmative defenses relies on all or part of that factual foundation, Plaintiff is entitled to summary judgment on its breach of contract claim.

That said, the court recognizes that the facts contained in Defendants' inadmissible evidence may be admissible if provided in an alternative form.  Because Defendants have been unrepresented since prior to the submission date for Plaintiff's motion for summary judgment, the court will reconsider its recommendation that Plaintiff be granted summary judgment if Defendants, within the time allotted for the filing of objections, either produce admissible evidence in support of their affirmative defenses or meet the requirements of Rule 56(d) for requesting additional time for discovery.  Defendants United and United Holdings must first retain counsel.

**IV.  Defendant Payne's Letter Motion to be Removed Individually**

In his letter to the court, Defendant Payne makes the following plea: "[Y]our honor, I humbly ask that I be removed individually from the matter because Marsoft presented no evidence that I committed fraud which, as to my understanding, is the only way I could have ever been included to begin with."[70]  In support of this

---

or declarant who is competent to testify on the matters asserted and that includes facts that would be admissible in evidence).

[70]    Doc. 145, Def. Payne's Letter Mot. to be Removed Individually p. 2 (emphasis omitted).

request, Defendant Payne argues that Plaintiff "NEVER presented any evidence that [Defendant Payne] defrauded Mr. Eckbo or Marsoft in our conversations."[71]   It is unclear from the context whether Defendant Payne is referring to fraud in the inducement of the settlement agreement or fraud in the underlying business relationship.[72]   He discusses facts related to both in the same paragraph.[73]

Defendant Payne also contends that Plaintiff "killed this company [Defendant United] by filing this lawsuit and later threatening our funders[;] I should not be personally punished because of Mr. Eckbo's greed."[74]   The statement refers to Eckbo's refusal of an offer Defendant United made "[l]ast May" to resolve their dispute.[75]   Defendant Payne also accuses Eckbo, in connection with their business arrangement, of not raising "a single penny," not recruiting "a single . . . client," and not providing any technical solution that worked.[76]   Defendant Payne attached Arrab

---

[71]     Id.

[72]     See id.   In Plaintiff's application for writs of attachment and garnishment, Plaintiff argues in favor of a writ of attachment based on the allegation that Defendants fraudulently induced Plaintiff to enter a settlement agreement.   Doc. 134, Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment pp. 5-6.   Perhaps, Defendant Payne is responding to that.

[73]     See Doc. 145, Def. Payne's Letter Mot. to be Removed Individually p. 2.

[74]     Id.

[75]     Id.

[76]     Id.

and Mitropolous' letters to his letter motion.

The court interprets his motion as one for summary judgment in his favor on Plaintiff's only pending claim, breach of contract. For the reasons explained in the prior section, the letters, including his own letter to the court, are not admissible evidence. Defendant Payne's assertion that Plaintiff can produce no evidence that Defendant Payne defrauded Eckbo is irrelevant.  Eckbo is not a plaintiff in this action, and Plaintiff's live pleading does not include a fraud claim.

Defendant Payne has failed to show that no genuine issue of material fact exists or that he is entitled to judgment as a matter of law.  Defendant Payne's dispositve motion should be denied.

**V.  Plaintiff's Application for Writ of Attachment and Writ of Garnishment**

Plaintiff seeks to attach the assets of Defendant Payne, including his interests in corporate entities and a 2013 Cadillac Escalade, and the value of contracts Defendant United has with liquefied natural gas ("LNG") offtakers.[77]  Plaintiff also seeks to garnish the payments owed to Defendant Payne by Defendant United.[78]

The federal rules allow for the seizure of property "to secure satisfaction of the potential judgment" in an action.  Fed. R. Civ. P. 64(a).  The law of the state in which the federal court sits applies to determine what remedies are available when no federal

---

[77]     See Doc. 134, Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment p. 6.

[78]     See id. p. 7.

statute applies.  Fed. R. Civ. P. 64(a).  Under Texas law, writs of attachment and garnishment are available prior to judgment.  See Tex. Civ. Prac. & Rem. Code §§ 61.003, 63.001; E.E. Maxwell Co. v. Arti Decor, Ltd., 638 F. Supp. 749, 752-53 (N.D. Tex. 1986)(applying Texas law); Fogel v. White, 745 S.W.2d 444, 445 (Tex. App.—Houston [14th Dist.] 1988, no writ).

However, both are considered to be harsh remedies.  See In re Argyll Equities, LLC, 227 S.W.3d 268, 271 (Tex. App.—San Antonio 2007, no pet.); Fogel, 745 S.W.2d at 446.  Thus, strict compliance with the statutory requirements is necessary.  In re Argyll Equities, LLC, 227 S.W.3d at 271.  Prejudgment attachment is not dependent on the truthfulness of the allegations in the affidavit but, rather, on compliance with the statute.  E.E. Maxwell Co., 638 F. Supp. at 752.  "[I]f the proper allegations are made, the writ shall issue."  Id.

General and specific grounds must be met to warrant issuance of a writ of attachment to a plaintiff: "(1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist . . . ."  Tex. Civ. Prac. & Rem. Code § 61.001.  "Debt" is defined as "an obligation to pay a liquidated sum on an express or implied contract."  E.E. Maxwell Co., 638 F. Supp. at 753; see also In re Argyll Equities, LLC, 227 S.W.3d at 271.

24

The statute lists nine specific grounds, only one of which must be met.  See Tex. Civ. Prac. & Rem. Code § 61.002.  Two of the nine are at issue here: (1) "the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;" and (2) "the defendant owes the plaintiff for property obtained by the defendant under false pretenses."  Id.

A plaintiff must support the application with an affidavit by the plaintiff or the plaintiff's agent or attorney that states the general and specific grounds for issuance and the amount of the demand.  See id. § 61.022(a); Tex. R. Civ. P. 592.  The application and all affidavits must be "made on personal knowledge and shall set forth such facts as would be admissible in evidence[,] provided that facts may be stated based upon information and belief if the grounds of such belief are specifically stated."  Tex. R. Civ. P. 592.

A writ of garnishment is available to a plaintiff based on three alternative grounds.  See id. § 63.001.  The only one raised here is when a plaintiff sues for a debt that is just, due, and unpaid, the defendant does not possess property in Texas, to the plaintiff's knowledge, that is subject to execution and is sufficient to pay the debt, and the garnishment is not sought to injure the defendant.  See id. § 63.001(2).  An affidavit that satisfies each of these elements is required in support of the application.  See id.; Tex. R. Civ. P. 658.  As with affidavits in support of a writ of attachment, the affidavit(s) must be made on personal knowledge and convey admissible facts.  Tex. R. Civ. P.

25

658.

When either a writ of attachment or a writ of garnishment is issued, the court shall specify the amount of bond required of the plaintiff.  Tex. R. Civ. P. 592, 658.  "Such bond shall be in an amount which, in the opinion of the court, will adequately compensate defendant in the event plaintiff fails to prosecute his suit to effect, and pay all damages and costs which may be adjudged against him for wrongfully suing out the writ of attachment."  Tex. R. Civ. P. 592; see also Tex. R. Civ. P. 658.

In support of its application, Plaintiff submitted the declarations of Eckbo and Plaintiff's counsel.[79]  The majority of Eckbo's declaration addressed the facts of the underlying dispute.[80]  Eckbo affirmed that the parties entered a settlement agreement that required Defendants to pay Plaintiff $1.6 million, which they failed to do; he did not address any other required element.[81]  Attached to Eckbo's declaration are the settlement agreement and two documents related to the parties' business dispute.[82]

The attorney's declaration stated no facts but authenticated ten documents: seven communications between attorneys regarding the

---

[79]  See Doc. 119-1, Ex. 1 to Pl.'s Mem. in Support of Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Decl. of Eckbo Dated May 23, 2014; Doc. 119-2, Ex. 2 to Pl.'s Mem. in Support of Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Decl. of Brandon F. White Dated May 23, 2014.

[80]  See Doc. 119-1, Ex. 1 to Pl.'s Mem. in Support of Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Decl. of Eckbo Dated May 23, 2014.

[81]  Id. p. 3.

[82]  See id. Exs. A-C.

26

settlement agreement and post-settlement negotiations, the deposition of Saenz taken on December 13, 2013, and transcript excerpts of hearings held before the undersigned on December 11 and 20, 2013.[83]  His declaration itself did not address any of the required elements.[84]

Defendants argue that Plaintiff's declarations do not satisfy the statutory requirements for attachment because neither declaration stated or provided evidence that the attachment was not sought for the purpose of injuring or harassing the defendant or that Plaintiff was likely to lose a debt absent attachment. Defendants also challenge whether they are justly indebted to Plaintiff.  Although they admit that an exact amount was owed by contract and unpaid, Defendants argue that the amount "is contingent upon Defendants' affirmative defenses."[85]  Defendants also contend that Plaintiff failed to show that either of the two specific grounds applies.  With regard to garnishment, Defendants argue that the declarations are not sufficient to satisfy the statutory requirements.

Plaintiff filed a supplemental declaration by Eckbo with its

---

[83]   See Doc. 119-2, Ex. 2 to Pl.'s Mem. in Support of Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Decl. of Brandon F. White Dated May 23, 2014, Exs. A-J.

[84]   See Doc. 119-2, Ex. 2 to Pl.'s Mem. in Support of Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Decl. of Brandon F. White Dated May 23, 2014.

[85]   Doc. 130, Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment p. 4.

reply to Defendants' opposition.[86]  Eckbo declared that: (1) the settlement agreement required Defendants to pay $1.6 million and they failed to pay it; (2) Plaintiff was not seeking prejudgment security to injure or harass Defendants; (3) to the best of Eckbo's knowledge, Defendants did not possess property in Texas sufficient to satisfy the $1.6 million debt; (4) Plaintiff was likely to lose the debt without attachment.[87]

In support of the last point, Eckbo added detail.[88]  He stated that Defendant United never paid the consulting fees it owed and that Defendants failed to pay the settlement amount.[89]  He cited to Defendants' representations in this case that Defendants were attempting to gather funds to pay the agreed settlement amount, indicating that they did not have funds of their own available to make payment.[90]  Eckbo also referred to, but did not cite to, the deposition transcripts of Defendant Payne and Saenz, both of whom, according to Eckbo, testified that all three defendants were insolvent or on the verge of insolvency.[91]

---

[86]    See Doc. 134-1, Ex. 1 to Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Supplemental Decl. of Eckbo Dated June 25, 2014.

[87]    Id. pp. 1-2.

[88]    See id. p. 2.

[89]    Id.

[90]    See id. (citing Doc. 123, Defs.' Resp. to Pl.'s Mot. for Expedited Disc. p. 5; Doc. 130, Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment p. 7).

[91]    See id.

Plaintiff's counsel submitted a supplemental declaration in order to introduce excerpts from the deposition transcript of Defendant Payne and an exhibit thereto.[92]   In the reply brief, Plaintiff cites to portions of Defendant Payne's deposition in which he admitted that he was "getting close to insolvency," that five judgments were pending against him, one of which resulted in the seizure of funds in one of his bank accounts, and that "[t]here's nothing left" of Defendant United.[93]   Defendant Payne also admitted that Defendants were not keeping up with the bills from their attorneys.[94]

Defendant Payne paid himself, Arrab, and others for expenses from the money loaned to Defendant United without any documentation, according to Defendant Payne.[95]   He also admitted setting up Arrabco Holdings Houston for the sole purpose of transferring funds to Arrab more easily.[96]

Notwithstanding Defendants' financial woes and undocumented

---

[92]     See Doc. 134-2, Ex. 2 to Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Supplemental Decl. of Brandon F. White Dated June 25, 2014.

[93]     Doc. 134-2, Ex. 2 to Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Dep. of Def. Payne pp. 41, 164; see also Doc. 134, Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment p. 4 (citing Doc. 134-2, Ex. 2 to Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Dep. of Def. Payne pp. 35, 38, 41, 164).

[94]     Doc. 134-2, Pl.'s Reply to Defs.' Resp. to Pl.'s Appl. for Writ of Attach. & Writ of Garnishment, Dep. of Def. Payne p. 175.

[95]     See id. pp. 70-72, 116, 120-21, 229-30.

[96]     Id. pp. 88-91.

transactions, Defendant Payne testified that he had ownership interests in several corporate entities and drove a 2013 Cadillac Escalade belonging to one of the companies and that Defendant United was a party to contracts with LNG offtakers, one of which was worth billions of dollars if the project with which it dealt was successful.[97]

The court finds that the application and declarations[98] filed by Plaintiff comply with the statutory requirements for the issuance of writs of attachment and garnishment. The declarations of Eckbo and Plaintiff's counsel, along with the supporting evidence, satisfy all of the general grounds for attachment, the specific ground for attachment that Defendants disposed of or were about to dispose of all of their property with the intent to defraud their creditors,[99] and all of the grounds for garnishment. Cf. E.E. Maxwell Co., 638 F. Supp. at 752-53 (finding that affidavit complied with statute when it stated facts in support of the statutory requirements).

The court grants Plaintiff's application for writs of attachment and garnishment. The writs will issue, if still

---

[97]    Id. pp. 46-51, 63-64, 187-89.

[98]    The state statute requires affidavits, but the federal rules allow the submission of an unsworn declaration in place of an affidavit. Compare Tex. Civ. Prac. & Rem. Code §§ 61.022, 63.001(2) with 28 U.S.C. § 1746. This court, therefore, accepts the declarations as being in strict compliance with the statute.

[99]    The court finds that Plaintiff did not provide sufficient factual support for the other specific ground it asserted, to wit, that defendant owes Plaintiff for property obtained by Defendants under false pretenses. As only one specific ground is necessary to support an application for writ of attachment, this flaw is of no significance. See Tex. Civ. Prac. & Rem. Code § 61.002.

sought,[100] upon Plaintiff's posting of a bond in the amount of $1.6 million.

## VI.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion to dismiss be **DENIED AS MOOT**, Plaintiff's motion for judgment be **DENIED AS MOOT**, Plaintiff's motion for summary judgment be **GRANTED**, and Defendant Payne's motion to be removed individually be **DENIED**.   Plaintiff's application for writs of attachment and garnishment is **GRANTED**.

The Clerk shall send copies of this MR&O to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of September, 2014.

_____
U.S. MAGISTRATE JUDGE

---

[100]     The court is recommending that Plaintiff be granted summary judgment. If that recommendation is adopted, Plaintiff will be entitled to a judgment that Plaintiff may then seek to execute without the necessity of a bond.